# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

CHRISTIAN A. MATHIS,

      Plaintiff,

v.                                               Case No. 06-CV-13298-DT

CITY OF DETROIT, et al.,

      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT CITY OF DETROIT'S "MOTION FOR SUMMARY JUDGMENT" AND GRANTING DEFENDANT WALTER BATES'S "MOTION TO DISMISS"

Pending before the court is Defendant City of Detroit's ("the City's") "Motion for Summary Judgment" and Defendant Walter Bates's "Motion to Dismiss," both filed on September 14, 2007. The motions have been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant both motions.

## I. BACKGROUND

On July 20, 2007, Plaintiff Christian Mathis filed his complaint, alleging that he was falsely arrested and imprisoned, in violation of his Fourth and Fourteenth Amendment rights under the United States Constitution.[1] (*See generally* Pl.'s Compl.) Plaintiff named as defendants the City of Detroit and Detroit police officers Bates, Kurtis Staples, Paul Jones and Anthony Jackson. (*Id.*) Plaintiff alleged that Defendants

---

[1]Plaintiff had filed an identical lawsuit in this court on September 16, 2005. (9/16/05 Compl., Case No. 05-73559.) After Plaintiff failed to respond to an order to show cause for lack of progress and prosecution, Plaintiff's complaint was dismissed on April 17, 2006. (4/17/06 Order, Case No. 05-73559.)

"gathered information which they knew or should have known to be false and utilized said information to secure the false arrest and imprisonment" of Plaintiff. (*Id.* at ¶ 9.) Plaintiff's allegations stem from his July 24, 2003 arrest and imprisonment for the murder of Isaac Brown ("Brown"). Plaintiff was held in custody awaiting trial for approximately six months before the charges against him were dropped on January 30, 2004.[2] (Pl.'s Resp. to City's Mot. at 11.)

## A. The Investigation

On the evening of July 22, 2003, Brown, his girlfriend Celestina Adams and his sister Melanie Brown ("Melanie") sat on the front porch of Brown's house in Detroit. (7/24/03 Adams Stmt. at 1, City's Mot. Ex. 2.) According to a statement Melanie gave to the police, a car pulled up to Brown's house, and a man with a gun got out of the car and shot Brown several times. (7/22/03 Melanie Stmt. at 2, City's Mot. Ex. 1.) Brown died as a result of the shooting.

In her statement to police, Melanie identified the shooter as "Trick Trick." (*Id.*) Plaintiff, a rapper and actor, goes by the stage-name "Trick Trick," and is a member of "The Goon Squad," a local rap group. (7/24/03 Melanie Stmt. at 1-2, City's Mot. Ex. 4.) Melanie also noted that the shooter was five feet seven inches tall and weighed approximately 160 pounds.[3] (7/22/03 Melanie Stmt. at 1, City's Mot. Ex. 1.) Melanie indicated that she had an opportunity to observe the shooter because she was standing

---

[2]Plaintiff was charged with first-degree murder and felony-firearm. (Warrant, City's Mot. Ex. 9.)

[3]Plaintiff asserts that he is six feet three inches tall and weighs 240 pounds. (Pl.'s Resp. to City's Mot. at 6.)

2

next to Brown when he was shot. (*Id.* at 2.) Two days after the shooting, Melanie went to the Detroit Police Department and presented a copy of a Goon Squad music compact disc bearing Trick Trick's, i.e., Plaintiff's, photograph, and again identified Plaintiff as the shooter. (7/24/03 Melanie Stmt., City's Mot. Ex. 4.) Officers presented Melanie with a picture of Plaintiff, and Melanie again identified him as the shooter. (*Id.* at 5.)

Additionally, Adams told police that on the day of the shooting, her friend "E," who was also on the porch with her, Brown and Melanie shortly prior to the shooting, told her that Trick Trick was driving around with an AK-47 in his truck and looking for the participants of an earlier neighborhood dispute. (7/24/03 Adams Stmt. at 1, City's Mot. Ex. 2.) Although Adams was inside Brown's house when the shots were fired, she indicated that Melanie told her that Trick Trick was the shooter. (*Id.* at 2.)

Based upon the above information, police secured a search warrant for Plaintiff's home. Police uncovered, *inter alia*, an AK-47 assault rifle and a shotgun. (Search Warrant Tabulation, City's Mot. Ex. 6.) Thereafter, Plaintiff voluntarily appeared at the Detroit Police Department to answer questions regarding the investigation. Plaintiff denied any involvement in the shooting. (Pl.'s Dep. at 120-21, City's Mot. Ex. 7.) A polygraph examination was administered to Plaintiff and it was determined that Plaintiff was "not being truthful" when he responded in the negative to the question of whether he shot Brown. (Polygraph Report, City's Ex. 8.)

The following day, an arrest warrant was issued for Plaintiff, and he was arrested for the murder of Brown. (Arrest Warrant, City's Mot. Ex. 9.) Plaintiff was arraigned and remanded to the custody of the Wayne County Jail. Thereafter, during a live lineup, Melanie again identified Plaintiff as the shooter. (Witness Stmt., City's Mot. Ex. 10.) At

Plaintiff's preliminary examination, Melanie testified that she saw Plaintiff shoot Brown. (Prelim. Exam Tr. at 13, City's Mot. Ex. 3.) At the conclusion of the preliminary examination, Plaintiff was bound over for trial.

Plaintiff alleges that after he was bound over, four individuals came to the Detroit Police Department and gave statements indicating that Waymon Murphy, not Plaintiff, was the shooter. (*See generally* Pl.'s Resp. to City's Mot.) Plaintiff further alleges that the police failed to properly record and forward the exculpatory statements to the prosecutor, thus keeping Plaintiff in custody for a crime that he did not commit. (*Id.*) Plaintiff asserts that only after his counsel procured the statements himself and forwarded them to the prosecutor did the prosecutor dismiss the charges against him. (*Id.* at 10-11.) The charges against Plaintiff were dismissed on January 30, 2004, after Plaintiff had been in jail for approximately six months. (*Id.*) According to the City, the charges were dismissed because Melanie recanted her identification of Plaintiff as Brown's killer.[4] (City's Mot. at 3.) Thereafter, Waymon stood trial for the murder of Brown, but was eventually acquitted. (*Id.* at 11-12.)

Plaintiff's complaint alleges that the City implemented a constitutionally offensive

---

[4]Melanie gave multiple statements to the police, a portion of which were unclear and not consistent with other portions. (*See* City's Mot. at 18; Pl.'s Resp. to City's Mot. at 6-7.) In her first statement, which she gave on the day of the shooting, Melanie indicated that she saw Trick Trick shoot Brown. In a subsequent, undated statement, she indicated that the reason she told police that Trick Trick committed the shooting was because "[a]fter the shooting, everyone on the block told me that Trick did the shooting." (Undated Melanie Stmt., Pl.'s Resp. to City's Mot. Ex. 8.) It is not clear whether this statement means that Melanie did not see Plaintiff commit the shooting. It is also unclear whether this is the statement that the City references when it indicates that Melanie recanted her identification of Plaintiff as the shooter. The record does not otherwise contain any statement in which Melanie explicitly recants her identification of Plaintiff.

4

policy that deprived him of (1) his right to due process, (2) his right to be free of illegal searches and seizures, (3) his right to privacy, (4) his right to freedom, liberty and the pursuit of happiness and (5) his right to be free of abusive acts committed under color of law. (Pl.'s Compl. at ¶ 16.) On September 14, 2007, the City filed a motion for summary judgment arguing that Plaintiff failed to establish that the City maintained a constitutionally offensive policy or practice that caused Plaintiff to suffer an injury. (*See generally* City's Mot.)

### B. Service of Process

On February 20, 2007, this court entered an order to show cause, directing Plaintiff to show cause why his claims against the individual Defendants should not be dismissed in light of Plaintiff's failure to serve these Defendants with a copy of the summons and complaint. (2/20/07 Order.) Plaintiff never responded to the order, and on March 9, 2007, the court entered an order dismissing without prejudice Bates, Staples, Jones and Jackson from the case. (3/9/07 Order.)

On June 14, 2007, the court held a scheduling conference, during which defense counsel agreed to stipulate to allow the reinstatement of the individual Defendants. (6/18/07 Order at 1.) Defense counsel further agreed that he would stipulate to accept service on behalf of all of the individual Defendants, except Bates, who was at that time no longer a city employee. (*Id.*) On July 16, 2007, Plaintiff effectuated service upon Bates. (City's Mot. at 4.) The parties dispute whether Plaintiff actually served Staples, Jones and Jackson through defense counsel. (*See generally* Pl.'s Resp. to City's Mot.; City's Reply.)

On September 14, 2007, Bates filed a motion to dismiss, arguing that Plaintiff's

5

action was barred by the statute of limitations. (*See generally* Bates Mot.)

## II. STANDARDS

### A. Rule 56 Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212

F.3d at 934 (citing *Anderson*, 477 U.S. at 256).  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 (emphasis and alteration in original) (citation omitted) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### B.  Rule 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. . . ." *Evans-Marshall v. Board of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002).  In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 466 (6th Cir. 2000).  Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth

7

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,1974 (2007).

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Twombly*, 127 S.Ct. at 1964-65 (citing Fed. R. Civ. P. 8(a)). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 127 S.Ct. 1955). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

## III. DISCUSSION

### A. 42 U.S.C. § 1983 Claim Against the City

The core of Plaintiff's claim against the City is that the City authorized or tolerated the following improprieties, which constituted a deprivation of his constitutional rights: (1) Defendant officers failed to properly record and forward to the prosecutor exculpatory statements from four witnesses who presented themselves to the Detroit Police Department after Plaintiff was bound over[5] and (2) Defendant officers presented Plaintiff in a live lineup, and presented a photograph of Plaintiff to a witness, both of which were improper identification procedures. (*See generally* Pl.'s Resp. to City's Mot.)

To prove a claim under 42 U.S.C. § 1983, a plaintiff must establish that (1) he was deprived of a right secured by the Constitution or laws of the United States and (2) he was subjected to this deprivation by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality may be held liable under § 1983 if the municipality itself caused the constitutional deprivation. *Id.* However, a municipality is not liable under § 1983 for an injury inflicted solely by its employees or agents; it is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983. *Id.* The local

---

[5]Plaintiff alleges that Defendant officers failed to inform the prosecutor of the following four exculpatory witnesses: (1) Plaintiff's brother, Kaamel Mathis, gave one of the officers a statement indicating that he saw Waymon Murphy, not Plaintiff, commit the murder, (2) Plaintiff's brother, George Mathis, told one of the officers that he heard Waymon admit to the murder, (3) Waymon's brother, James Murphy, told Defendant Jones that he saw Waymon commit the murder and (4) Verna Alexander, Waymon's mother, gave a statement to the police indicating that she believed that Waymon committed the murder. (Pl.'s Resp. to City's Mot. at 8-10.)

government's policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Id.* (quoting *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 (1978)).

### 1. Plaintiff's Arrest

Plaintiff cannot make a colorable claim that his arrest constituted a violation of § 1983. The allegedly exculpatory witnesses, which constitute the core of Plaintiff's § 1983 claim, did not come forward until well after Plaintiff's arrest. Significantly, the evidence known to the police at the time of Plaintiff's arrest pointed to Plaintiff as the shooter. In light of (1) Melanie's multiple statements identifying Plaintiff as Brown's shooter, (2) Plaintiff's admitted presence in the vicinity of the shooting, (3) Plaintiff's failed polygraph examination[6] and (4) the presence of a firearm, the type of which witnesses attribute to the shooter, in Plaintiff's home, there was probable cause to arrest Plaintiff for the murder of Brown. *See Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (stating that probable cause to arrest exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person in believing that the suspect committed an offense); *Coogan v. City of Wixom*, 820 F.2d 170, 174 (6th Cir. 1987) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released."). Because police had probable cause to arrest Plaintiff, Plaintiff's arrest cannot serve as the basis for a § 1983 violation.

---

[6]Although a failed polygraph examination does not, standing alone, constitute probable cause, it may properly serve as one factor in the probable cause inquiry. *See Lopez v. Ruhl*, 584 F.Supp. 639, 644, n.2 (W.D. Mich. 1984).

## 2. Exculpatory Witnesses

Plaintiff avers that Defendant officers failed to properly record and forward to the prosecutor exculpatory statements from four witnesses. Plaintiff asserts that because the officers acted pursuant to a constitutionally offensive policy implemented by the City, the City is in violation of § 1983.

To establish municipal liability, a plaintiff must identify the policy, connect the policy to the City itself and show that the particular injury was incurred because of the execution of that policy. *Searcy,* 38 F.3d at 287. Even assuming that there were in fact four witnesses who provided statements to the Detroit Police Department exculpating Plaintiff and assuming further that the officers acted improperly in failing to further investigate or to forward to others the additional statements,[7] Plaintiff cannot establish that the *City* is responsible for such improprieties. Plaintiff provides no evidence that (1) the City initiated, authorized or tolerated a policy pursuant to which officers were to disregard exculpatory statements or (2) a practice of disregarding exculpatory statements, if one existed, was so widespread as to have the force of law. The court is not persuaded that the incidents of which Plaintiff complains represent anything more than isolated examples of mere negligence or aberrations unprompted by any constitutionally offensive policy, formal or informal. To establish a §1983 claim, Plaintiff must do more than simply allege that improprieties were committed pursuant to a City policy. Moreover, even if Plaintiff could prove the existence of a policy authorizing the

---

[7]"It is the arresting officers' responsibility to ensure that the arrest is supported by probable cause. Once [the suspect is] arrested, the police are not required to investigate further." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005).

withholding of exculpatory statements, Plaintiff fails to establish a policy "so permanent and well settled as to constitute a custom or usage with the force of law" and a policy that includes "deeply embedded traditional ways of carrying out state policy." *See Miller v. Calhoun County,* 408 F.3d 803, 815 (6th Cir. 2005). Where, as here, Plaintiff fails to demonstrate that such a policy or custom existed, summary judgment is proper. *See Barnier v. Szentmiklosi,* 810 F.2d 594, 599 (6th Cir. 1987).

### 3. Identification Procedures

Finally, Plaintiff alleges that the live lineup in which he was placed, and the fact that an officer presented a witness with Plaintiff's photograph for identification constituted a violation of § 1983. Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois,* 434 U.S. 220, 227 (1977). An identification procedure violates due process if it is impermissibly suggestive and the suggestiveness led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams,* 971 F. Supp. 1143, 1147-48 (E.D. Mich.1997). Plaintiff, however, neither articulates how the identification procedures implemented in his case were unnecessarily suggestive nor does he present any evidence to support such a contention. Furthermore, the record reflects that before the police acted to verify Plaintiff's identity, Melanie had already provided the police with a photograph of Plaintiff on a compact disc jacket and claimed that he was the shooter. Accordingly, the court has no basis upon which to find a Constitutional violation grounded upon identification procedure improprieties.

In sum, Plaintiff fails to create a genuine issue of material fact that the City had a

custom or policy that was the moving force behind the officers' alleged improprieties. Consequently, Plaintiff fails to establish municipal liability under 42 U.S.C. § 1983 and summary judgment in favor of the City is proper.

### B. Statute of Limitations

Because Congress did not provide a specific statute of limitations for § 1983 claims, the court must apply the most analogous state statute of limitations. *Kurzawa v. Mueller,* 545 F. Supp. 1254, 1259 (E.D. Mich. 1982). Federal courts have held, almost unanimously, that Michigan's three-year catch-all personal injury statute of limitations found in Mich. Comp. Laws § 600.5805(8) applies to actions brought under the federal civil rights statutes. *Id.*

A cause of action arising out of §1983 accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action. *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 856 (6th Cir. 2003). In determining when the cause of action accrues in § 1983 cases, the court looks to the event that should have alerted the typical lay person to protect his rights. *Id.*

Plaintiff does not dispute that his cause of action accrued on July 25, 2003, when he was arrested. (*See generally* Pl.'s Resp. to Bates's Mot.) Plaintiff filed suit on July 20, 2006, within the statute of limitations period. However, Plaintiff's cause of action against Bates was dismissed on March 9, 2007 for failure to effectuate service and lack of prosecution. Actions dismissed for failure to effectuate service do not toll the statute of limitations. *Wilson v. Grumman Ohio Corp.,* 815 F.2d 26, 29 (6th Cir. 1987). Plaintiff's claims against Bates were not reinstated until June 26, 2007, well after the three-year statute of limitations had run. Accordingly, Plaintiff's action against Bates is

barred by the statute of limitations.

Plaintiff asserts that the doctrine of equitable estoppel bars Bates from raising the statute of limitations as a defense. As it relates to the statute of limitations, the doctrine of equitable estoppel is a judicially created exception to the general rule that statutes of limitation run without interruption. *Lothian v. Detroit,* 324 N.W.2d 9, 17 (Mich. 1982). One who seeks to invoke the doctrine generally must establish that there has been (1) a false representation or concealment of a material fact, (2) an expectation that the other party will rely on the misconduct and (3) knowledge of the actual facts on the part of the representing or concealing party. *Id.* at 18. Courts are reluctant to recognize estoppel absent intentional or negligent conduct designed to induce a plaintiff to refrain from bringing a timely action. *Id.*

Plaintiff argues that, before the claims against the individual Defendants were dismissed for failure to effectuate service, Plaintiff served defense counsel on behalf of the individual Defendants, pursuant to the parties' stipulation. Plaintiff claims that he relied on defense counsel's stipulation to accept service on behalf of the individual Defendants, and thus, Bates should be estopped from raising the statute of limitations defense. Essentially, Plaintiff's assertion is that because he allegedly served defense counsel on behalf of Bates, the court improperly dismissed Bates for lack of service of process. However, there is nothing in the record to support such an assertion. As Bates points out, Plaintiff (1) failed to provide the court with proof of service regarding any Defendant, (2) failed to provide the court with a document reflecting transmittal of the summons and complaint to defense counsel, (3) has not provided the court with any specifics regarding his alleged serving of Bates's counsel, such as the date that he

14

served Bates's counsel and in what manner, (4) failed to respond to the court's order directing Plaintiff to show cause why his action against the individual Defendants should not be dismissed for failure to effectuate service, (5) failed to move to set aside the dismissal on the grounds that the individual Defendants had been served and (6) failed to raise the argument, prior to Plaintiff's response to Bates's motion to dismiss, that the individual Defendants had been timely served. Rather, at the scheduling conference wherein defense counsel stipulated to reinstate the individual Defendants, Plaintiff acknowledged that he would be required to effectuate service upon these Defendants. Plaintiff's present assertion that he served all of the individual Defendants, such that it was improper to dismiss them from this action, is completely unsubstantiated. Unsupported assertions are insufficient to survive dismissal. *See Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005). Moreover, there is no evidence to suggest that defense counsel or any Defendant made a false representation or concealment of a material fact, as required to invoke the doctrine of equitable estoppel. Because the claim against Bates is barred by the statute of limitations and the doctrine of equitable estoppel is inapplicable, the court will grant Bates's motion to dismiss.

Moreover, the court finds that the statute of limitations analysis warranting Bates's dismissal from this action also warrants the dismissal of Jones, Jackson and Staples. In the same manner that Plaintiff's cause of action against Bates was reinstated after the statute of limitations had run, Plaintiff's claims against Jones, Jackson and Staples likewise were reinstated *after* the statute of limitations had run - for all claims against the individual Defendants were reinstated at the same time. The court expressed this assessment to Plaintiff in a November 6, 2007 "Order Inviting a Sur-reply

from Plaintiff," and invited Plaintiff to respond to the court's determination that (1) Plaintiff had failed to effectuate service upon Jones, Jackson and Staples via their counsel and (2) the claims against Jones, Jackson and Staples should be analyzed in the same manner as the claim against Bates, i.e., the statute of limitations defense asserted in Bates's motion to dismiss applies also to Jones, Jackson and Staples. (11/6/07 Order at 1-2.) Plaintiff did not respond to the court's order within the deadline provided by the order. Accordingly, the court will dismiss Defendants Jones, Jackson and Staples because Plaintiff's claims against them are barred by the statute of limitations. *See Watson v. Wayne County,* 90 F. App'x 814, 815 (6th Cir. 2004) (holding that a *sua sponte* dismissal is warranted where the claims are barred by the statute of limitations).

## IV.  CONCLUSION

IT IS ORDERED that the City's "Motion for Summary Judgment" [Dkt. # 16] is GRANTED.

IT IS FURTHER ORDERED that Defendant Bates's "Motion to Dismiss" [Dkt. # 17] is GRANTED and Plaintiff's claims against Bates are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's claims against Defendants Jones, Jackson and Staples are DISMISSED WITH PREJUDICE.

    S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  November 21, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record

on this date, November 21, 2007, by electronic and/or ordinary mail.

                                                 S/Lisa Wagner
                                                 Case Manager and Deputy Clerk
                                                 (313) 234-5522